**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GUANJUN ZHU,<br><br>Plaintiff,<br><br>v.<br><br>SHENZHENSHITELIKEDIANZISHANGWUYOUXIANGONGSI d/b/a TELKDZ,<br><br>Defendant. | Case No. 2:26-cv-01727-RJC<br><br>Judge Robert J. Colville |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**(FED. R. CIV. P. 12(b)(1), 12(b)(5), AND 12(b)(6))**

Defendant Telkdz (whose true name is shenzhenshitelikedianzishangwuyouxiangongsi) ("Defendant") respectfully submits this Brief in support of its Motion to Dismiss the First Amended Complaint (ECF No. 16) (the "FAC") filed in the name of Guanjun Zhu ("Zhu"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6).

## I. INTRODUCTION

Defendant's first motion to dismiss and supporting brief (ECF Nos. 14, 15) (the "First Motion" and "First Brief") showed that the plaintiff that commenced this action, Henan Jinyuanfeng Plastic Co., Ltd. (the "Company"), had been deregistered under the law of the People's Republic of China on March 20, 2025, seventeen months before the complaint (ECF No. 1) (the "Complaint" or "Compl.") was filed in its name. First Brief at 6–8; ECF No. 14-4. The FAC does not dispute that fact. It pleads it. FAC ¶¶ 4, 6, 13. The FAC's answer is to replace the Company with its former sole shareholder, Zhu, through what it calls an amendment "as a matter of course" under Rule 15(a)(1)(B) and a substitution under Rule 17(a)(3). FAC at 1 & ¶ 4; Zhu's

opposition to the First Motion (ECF No. 18) (the "Opposition" or "Opp.") at 5–7.

Neither rule permits that. An action commenced in the name of an entity that had already ceased to exist is a nullity. There was no "party" with a "pleading" to amend under Rule 15(a)(1)(B), no "action" for Rule 17(a)(3) to continue, and Article III standing is measured when an action is commenced, not when a new plaintiff is later written into the caption. Nor was any "understandable mistake" made. On the FAC's own account, Zhu was the Company's sole shareholder and legal representative; the Company, acting through him, assigned the copyright to him in February 2025; the Company was deregistered five weeks later; and suit was then filed in the Company's name on the allegation that it was "organized and existing." If Zhu has a claim, his remedy is to file his own action. This one should be dismissed.

The FAC also fails on its own terms. The assignment on which Zhu's ownership rests conveys no claim that accrued before February 10, 2025, and the FAC pleads no fact supporting its alternative theory that Zhu is the Company's "successor." The Registration still covers only a two-dimensional drawing and, by the Copyright Office's express annotation, excludes the lamp shown in it; the FAC's new theory that Defendant "reproduced" the drawing on its listing pages is contradicted by the FAC's own exhibits, which depict a physical lamp, and by 17 U.S.C. § 113(b), to which § 113(a) is expressly subject. And nearly two months after this action was filed, Defendant, whose business name and address are displayed on Amazon's public profile page for the very storefront the FAC identifies, has still not been served, as Zhu concedes. Opp. at 12.

## II. BACKGROUND

### A. The Complaint and the First Motion

On August 18, 2026, a Complaint was filed in the name of the Company, alleging that the Company "is a company organized and existing under the laws of the People's Republic of

China" and "the sole owner" of U.S. Copyright Registration No. VA 2-273-401 (the "Registration"). Compl. ¶¶ 4, 6. On September 9, 2026, Defendant moved to dismiss. From the official enterprise registry of the People's Republic of China, Defendant showed that the Company had been deregistered on March 20, 2025. First Motion ¶¶ 2–3; First Brief at 6–8; ECF Nos. 14-4, 14-5. Defendant also moved on the merits grounds renewed below and on Rule 12(b)(5). First Brief at 8–18. On October 1, 2026, the Court denied the First Motion as moot in light of the FAC. ECF No. 19.

**B. The First Amended Complaint**

On September 30, 2026, Zhu filed the FAC, "substituted as Plaintiff in place of" the Company "pursuant to Federal Rules of Civil Procedure 15(a)(1)(B) and 17(a)(3)." FAC at 1. The FAC admits that the Company "was deregistered on March 20, 2025," FAC ¶¶ 4, 6, 13, and that Zhu "was the Former Company's sole shareholder and legal representative," *id.* ¶¶ 4, 6. It explains that "[t]he original Complaint was filed in the Former Company's name because the Former Company is the claimant of record on the registration certificate." *Id.* ¶ 4.

The FAC pleads a new chain of title. Zhu created the work and "transferred all right, title, and interest in the work to the Former Company by written agreement," an agreement the FAC still neither describes nor attaches. *Id.* ¶ 10. On February 10, 2025, the Company "assigned to Plaintiff all of its copyright property rights in the Copyright-in-Suit," without consideration, by an agreement that bears the Company's seal and Zhu's signature. *Id.* ¶ 11 & Ex. F (ECF No. 16-6). Five days later the Company issued a "Statement of Ownership," likewise sealed by the Company and signed by Zhu as its legal representative. *Id.* ¶ 12 & Ex. G (ECF No. 16-7). The Company was deregistered five weeks after that. *Id.* ¶ 13. The FAC seeks relief "for all infringement occurring on or after February 10, 2025, and, as successor to the Former Company,

for infringement occurring before that date." *Id.* ¶ 73.

The FAC also reframes the accused conduct. The Complaint alleged that Defendant sells "three-dimensional illusion soccer lamps." Compl. ¶ 1. The FAC alleges that Defendant infringed "by reproducing the Copyright-in-Suit on the listing pages of the Infringing Products" and by "displaying copies of the Copyright-in-Suit on its Amazon listing pages," FAC ¶ 64, and invokes 17 U.S.C. § 113(a), *id.* ¶ 63. The exhibits are unchanged. Exhibit A is the Registration certificate, which bears the Copyright Office's annotation: "No sculpture deposited. Drawing/Illustration registered; no copyright or registration for any useful article shown in the drawing." ECF No. 16-1. Exhibit B is the registered drawing, a wireframe soccer ball on a cylindrical base. ECF No. 16-2. Exhibit C consists of three photographs of the product Plaintiff purchased from Defendant, a "Linkax 3D Lamp Illusion" night light. ECF No. 16-3 at 2–4. No listing page is attached. The FAC's side-by-side comparison places the drawing beside a photograph of that lamp. FAC ¶ 24. The former Count II has been withdrawn. Opp. at 12.

The FAC identifies Defendant's storefront by its seller name and Amazon Seller ID, FAC ¶ 1, and names Defendant by its registered name in the caption. Amazon's public seller profile page for that Seller ID displays, under the heading "Detailed Seller Information," Defendant's business name, shenzhenshitelikedianzishangwuyouxiangongsi, and its business address in Shenzhen, Guangdong, China. Declaration of Biqin Zhang filed herewith (the "Zhang Declaration" or "Zhang Decl.") ¶¶ 3–5 & Exs. 1–2. Defendant's legal name and registered address have also been of record in this case since September 9, 2026. ECF No. 14-3 ¶ 1. The FAC nonetheless repeats the Complaint's allegations that Defendant is a "seemingly fictitious seller alias" that "appears to have engaged in fraudulent conduct" in registering with Amazon, uses "fictitious name(s)," and "maintains bank accounts outside this Court's reach," each pleaded

on "information and belief," on what "appears," or on "the limited information available and Google research." FAC ¶¶ 29, 38, 44–45.

The FAC also alleges that Plaintiff sells a "soccer lamp product line" through Amazon and that products "embodying the Copyright-in-Suit" have been available there "for years." FAC ¶¶ 15, 18, 68. It identifies no listing, product, seller account, or sale of Plaintiff's own and attaches nothing to show one. The only transaction the FAC documents is the purchase from Defendant photographed on August 17, 2026, the day before the Complaint was filed. ECF No. 16-3 at 4.

### C. Service

Zhu concedes that Defendant has not been served and states that he "will promptly effect service under Rule 4(f)(1), including through the Hague Service Convention." Opp. at 12. Defendant had received no summons or complaint from Plaintiff by any means when it filed the First Motion, ECF No. 14-3 ¶¶ 3–5; it has received none since, Zhang Decl. ¶ 6; and the Opposition confirms that no service had been attempted as of October 1, 2026. Opp. at 12. As of the date of this Motion, the docket reflects no summons returned executed, no request for waiver under Rule 4(d), and no motion under Rule 4(f)(3).

## III. LEGAL STANDARD

To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court disregards allegations that "are no more than conclusions." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

The Court considers the complaint, its exhibits, matters of public record, and undisputedly authentic documents on which the claims are based, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014), and where an exhibit contradicts the complaint's characterization of it, the exhibit controls, *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994). "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). In copyright cases, the Court may compare the works and dismiss under Rule 12(b)(6) where, as a matter of law, they are not substantially similar in protectable expression. *Tanksley v. Daniels*, 902 F.3d 165, 171–72 (3d Cir. 2018).

A motion under Rule 12(b)(1) may present a factual attack on subject-matter jurisdiction, in which case the Court may consider evidence outside the pleadings, no presumption of truthfulness attaches to the complaint, and the plaintiff bears the burden of establishing jurisdiction. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). On a Rule 12(b)(5) motion the party asserting the validity of service bears the burden of proof, *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993), and the Court may dismiss or quash service and direct proper service, *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). The Zhang Declaration is offered on those issues and for background only; Defendant does not rely on it for its Rule 12(b)(6) arguments.

# IV. ARGUMENT

## A. This Action Was a Nullity When It Was Commenced, and the FAC Cannot Revive It.

### 1. The FAC admits that the plaintiff that commenced this action did not exist.

The FAC pleads that the Company was deregistered on March 20, 2025, FAC ¶¶ 4, 6, 13, and the official registry confirms it, ECF No. 14-4. Under Rule 17(b)(2), the Company's capacity is governed by Chinese law, under which a company ceases to exist upon deregistration. First Brief at 7. It is "well settled that at common law and in the federal jurisdiction a corporation which has been dissolved is as if it did not exist," and its dissolution "abates all litigation in which the corporation is appearing either as plaintiff or defendant." *Oklahoma Natural Gas Co. v. Oklahoma*, 273 U.S. 257, 259 (1927). Whether its life continues "even only for litigating purposes" is "really not procedural or controlled by the rules of the court in which the litigation pends"; it "concerns the fundamental law of the corporation" enacted by the state that created it. *Id.* at 259–60; *see Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp.*, 302 U.S. 120, 124–25 (1937). When the Complaint was filed, the Company could not sue, could not be injured, and could not authorize counsel to act in its name. *See Oklahoma Natural Gas*, 273 U.S. at 261 (observing that counsel for the dissolved corporation "does not explain how he continues to represent plaintiff in error, if in fact it has ceased to be"). Zhu does not argue otherwise. Opp. at 5.

### 2. An action commenced by a non-existent entity is a nullity that amendment cannot cure.

The consequence follows from authority that binds this Court. Because the Company's dissolution "abates all litigation in which the corporation is appearing either as plaintiff or defendant," and nothing in Chinese law prolongs its life for litigation, there was no plaintiff on August 18, 2026 and nothing was commenced. *Oklahoma Natural Gas*, 273 U.S. at 259–60;

First Brief at 7. The real party in interest is likewise fixed at the outset: Rule 17 "requires that an action involve only the real parties in interest, as determined by transfers prior to the initiation of suit." *FDIC v. Deglau*, 207 F.3d 153, 159 n.2 (3d Cir. 2000). By Zhu's own account, the Company had transferred the copyright to him eighteen months before suit; it was neither an existing entity nor a real party in interest when the Complaint was filed in its name. Courts that have confronted suits filed in the name of a plaintiff with no legal existence or no standing apply these principles to hold the suit a nullity that amendment cannot cure.

*Destasio v. A-C Prods. Liab. Trust*, 311 F.R.D. 152 (E.D. Pa. 2015), is illustrative. Actions had been filed in the names of plaintiffs who had died before filing, and amended complaints had substituted their personal representatives, who invoked Rule 17(a)(3). The court dismissed the actions. "[T]he threshold issue is one of legal existence rather than capacity to sue"; because the suits were "nullities ab initio due to the deceased Plaintiffs' lack of legal existence, … Rule 17 never becomes relevant," for "Rule 17 only contemplates the capacity to sue, not the prerequisite of legal existence." *Id.* at 155. "Because the original complaints in these cases do not exist in a legal sense, they may not be amended nor may plaintiffs be substituted," and "there is nothing to which the amended complaints can relate back." *Id.* at 155–56.

The same is true of a plaintiff that never had standing. "[W]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action," and that is so even where the amendment is tendered as of right: "[t]he principal issue involved is not whether the complaint can be amended as a matter of course," but whether the plaintiff "could offer an amendment to the complaint at all," and a plaintiff without standing "was without power to amend the complaint so as to initiate a new lawsuit with new plaintiffs."

*Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282–83 (5th Cir. Unit A Mar. 1981). A plaintiff that "had no standing to bring this action" likewise has "no standing to make a motion to substitute the real party in interest," because "[t]he Federal Rules of Civil Procedure cannot expand the subject matter jurisdiction of federal courts beyond the limits of [the] U.S. Constitution." *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002). Even the Second Circuit, which has declined to follow this "nullity doctrine," acknowledges that it is "[t]he far more common view," and it agreed that dissolved entities in whose names an action had been filed "lacked Article III standing when the case was initiated in their names." *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 380 (2d Cir. 2021).

**3. Rule 15(a)(1)(B) does not permit a stranger to adopt a nullity.**

Rule 15(a)(1)(B) permits "[a] party" to amend "its pleading." The Company could not amend anything; it did not exist. Zhu was not a party and had no pleading. The FAC is therefore not an amendment by a party of its own pleading. It is a new action by a new plaintiff, filed without a summons under a case number that belongs to a suit that never validly existed. *See Deglau*, 207 F.3d at 159 n.2; *see also Summit Office Park*, 639 F.2d at 1282–83. Nor can amendment cure the jurisdictional defect. Standing is assessed as of the filing of the complaint, *Davis v. FEC*, 554 U.S. 724, 734 (2008), and the Third Circuit has held that an amended complaint, "while the operative pleading for purposes of evaluating the sufficiency of the allegations, the viability of the claims, and the requested relief," "does not restart the date for assessing standing." *Lutter v. JNESO*, 86 F.4th 111, 125 (3d Cir. 2023) (footnote omitted). On August 18, 2026, the only plaintiff before the Court was a company that did not exist. No later pleading can change what was true on that date.

The order denying the First Motion as moot does not resolve these questions. An

amended complaint ordinarily "supersedes the original and renders it of no legal effect," *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (quotation omitted), and the Court accordingly denied the First Motion, which was directed to the Complaint, without reaching its merits. ECF No. 19. Whether a plaintiff that did not exist could amend at all, and whether a new plaintiff could be substituted into a nullity, could not have been presented by a motion filed before the FAC existed. They are presented now.

**4. Rule 17(a)(3) does not apply, and its conditions are not met in any event.**

Zhu's principal argument is that Rule 17(a)(3) forbids dismissal until the real party in interest has had a reasonable time to be substituted. Opp. at 6–7. The rule addresses dismissal "for failure to prosecute in the name of the real party in interest," Fed. R. Civ. P. 17(a)(3), that is, a case in which an existing plaintiff has sued on a claim that belongs to someone else. It presupposes an "action" commenced by a plaintiff with the legal existence to commence it, *see Oklahoma Natural Gas*, 273 U.S. at 259–60; *Destasio*, 311 F.R.D. at 155, and a mistake of the kind the rule was written to forgive, *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 562–63 (3d Cir. 2008) (Rule 17(a)(3) "should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice"; a later assignment "cannot ratify the … commencement of suit on a claim which theretofore did not exist" (quoting *United States ex rel. Wulff v. CMA, Inc.*, 890 F.2d 1070, 1075 (9th Cir. 1989))). It does not supply a plaintiff where there was none.

Even where Rule 17(a)(3) applies, the Third Circuit confines it to its purpose. The rule "is designed to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought," and "should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice." *Gardner*,

544 F.3d at 562 (quoting 6A Charles Alan Wright et al., *Federal Practice & Procedure* § 1555 (2d ed. 2008)). The Advisory Committee cautioned that the provision "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made," and where neither condition is met the rule does not apply. *Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 n.8 (3d Cir. 1995) (quoting Fed. R. Civ. P. 17 advisory committee's note to 1966 amendment).

Neither condition is met here. Determining the proper party was not difficult, and the mistake was not understandable. On the FAC's own account, Zhu was the Company's sole shareholder and legal representative. FAC ¶¶ 4, 6. On February 10, 2025, the Company, acting under its seal, assigned the copyright to Zhu without consideration, and five days later Zhu signed, as the Company's legal representative, a sealed "Statement of Ownership" declaring that the copyright "has been lawfully held by Guanjun Zhu" since the assignment and that "there is no dispute as to ownership of the copyright." *Id.* ¶¶ 11–12 & Exs. F, G. Five weeks after that, the Company was deregistered. *Id.* ¶ 13. Seventeen months later, the Complaint alleged that the Company "is a company organized and existing" and "the sole owner" of the Registration, Compl. ¶¶ 4, 6, and described the chain of title as running from Zhu to the Company, with no mention of any assignment back, *id.* ¶ 8. Zhu now says that he, not the Company, "was the sole assigned owner of the Copyright-In-Suit on August 18, 2026, when this action was commenced." Opp. at 6. Every statement in the Complaint on these points was contradicted by documents Zhu himself had signed and that the FAC now attaches. Defendant does not rely on those statements as admissions against the FAC, *see W. Run*, 712 F.3d at 171–72; it relies on them as the record of how this action was commenced, which is what Rule 17(a)(3) asks. The FAC's explanation, that the Company "is the claimant of record on the registration certificate," FAC ¶ 4, does not

describe a mistake. It describes a decision to sue in the name of a defunct entity because that name appeared on a certificate, and Zhu's characterization of that decision as the "understandable mistake" the rule protects, and as an error "of naming, not of substance," Opp. at 6–7, cannot be reconciled with his own pleading.

Nor would dismissal work a forfeiture. The Copyright Act's limitations period is three years from accrual, 17 U.S.C. § 507(b), and the FAC alleges infringement that continues today, FAC ¶¶ 50, 70. Zhu may file his own action at any time. Rule 17(a)(3) exists to prevent the loss of a claim; it does not exist to spare a plaintiff the step of filing a proper complaint. Zhu's alternative request that the Court "treat the FAC as a motion to substitute under Rules 17(a)(3) and 21, or grant Plaintiff leave to substitute," Opp. at 7, fails for the same reasons. Rule 21 permits the Court to add or drop parties to an action; it does not create an action where none was validly commenced.

**5. The defect is jurisdictional, and the action should be dismissed.**

Zhu argues that capacity is not jurisdictional and that Defendant's request for a merits dismissal is inconsistent with its jurisdictional argument. Opp. at 7–8. The Company's non-existence is both a capacity defect under Rule 17(b) and a jurisdictional one. An entity that did not exist on August 18, 2026 could not have suffered an injury in fact on that date, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), as even *Fund Liquidation* recognized, 991 F.3d at 381. Defendant's merits arguments, set out in Parts IV.B through IV.D, are presented in the alternative, for the event the Court concludes that jurisdiction exists and that the substitution was permissible. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Because the action was a nullity when commenced, it should be dismissed in its entirety, and Defendant reserves its right to seek fees and costs under 17 U.S.C. § 505 and 28 U.S.C. §

1927 for a complaint filed in the name of an entity that its own principal knew did not exist.

### B. Even If Zhu Could Be Substituted, the FAC Does Not Plausibly Allege That He Owns the Claims He Asserts.

#### 1. The assignment conveys no claim that accrued before February 10, 2025.

Only "[t]he legal or beneficial owner of an exclusive right under a copyright" may sue, and only for an infringement "committed while he or she is the owner of it." 17 U.S.C. § 501(b). Claims for infringement that accrued before a transfer remain with the transferor unless the assignment expressly conveys them. *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980–81 (2d Cir. 1991). Exhibit F conveys the Company's "copyright property rights," enumerated as the rights of reproduction, distribution, exhibition, communication through information networks, adaptation, translation, and remuneration. ECF No. 16-6, art. 1. It says nothing about causes of action, accrued or otherwise. Any claim for infringement before February 10, 2025 therefore remained with the Company, which, being deregistered, can neither assert it nor now assign it. The FAC, moreover, pleads no fact about any sale by Defendant before that date; the only conduct it documents is a purchase made on August 17, 2026. ECF No. 16-3 at 4.

The FAC's alternative theory, that Zhu may recover for pre-assignment infringement "as successor to the Former Company," FAC ¶ 73, is a legal conclusion unsupported by any fact beyond Zhu's former shareholding. The FAC does not allege that the Company's claims were distributed to Zhu in liquidation, that any instrument transferred them, or that Chinese law vests a deregistered company's choses in action in its former shareholder. *See* 17 U.S.C. § 201(d)(1). Zhu's own brief abandons the theory: "The FAC seeks relief for infringement occurring on or after February 10, 2025." Opp. at 9. Any claim for infringement before that date should be dismissed.

**2. The chain of title remains incomplete on the FAC's own account.**

The FAC pleads that Zhu "transferred all right, title, and interest in the work to the Former Company by written agreement," FAC ¶ 10, but, while attaching two later documents, it still neither attaches nor describes that agreement: not its date, not its terms, not the "work" it concerned. The omission matters because the Registration certifies that Zhu created a "sculpture," that the Company became claimant "[b]y written agreement," and that the Office registered only a drawing. ECF No. 16-1. Zhu's response is that it makes no difference whether the first transfer reached the drawing, because any rights that never passed to the Company "remained with Plaintiff." Opp. at 8–9. But the FAC pleads no such thing; it pleads a transfer to the Company and a transfer back. FAC ¶¶ 10–11. And if the Company never owned the drawing, then the Registration, which names the Company as claimant by written transfer, rests on an inaccurate statement of ownership, and the presumption of validity on which the FAC relies, FAC ¶¶ 8, 22, is rebutted on the FAC's own alternative theory. *See* 17 U.S.C. § 410(c); *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 667–68 (3d Cir. 1990) (presumption is rebuttable). In no event does the certificate presume Zhu's ownership: it is prima facie evidence only of "the facts stated in the certificate," 17 U.S.C. § 410(c), and the only fact it states about Zhu is that he is the author. ECF No. 16-1. Either the drawing passed to the Company, in which case Zhu's rights begin on February 10, 2025 and carry no earlier claims (Part IV.B.1), or it did not, in which case the Registration's identification of the Company as claimant "[b]y written agreement" is inaccurate and the chain of title the FAC pleads is untrue. The FAC does not say which. A plaintiff may not plead one chain of title and argue another. If the Court permits Zhu to proceed at all, it should require him to plead which it is and to attach the instrument on which his title depends.

### C. The Registration Covers a Drawing, Not the Lamp, and the FAC's New "Reproduction" Theory Is Contradicted by Its Own Exhibits.

#### 1. The Registration excludes the useful article, and § 113(b) confirms the exclusion.

No civil action for infringement "shall be instituted until … registration of the copyright claim has been made." 17 U.S.C. § 411(a); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019). Registration is work-specific: it secures the claim in the material actually deposited and registered. *See* 17 U.S.C. §§ 408(a), 411(a); 37 C.F.R. § 202.3(b)(4); *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203–06 (3d Cir. 2005).

Here the Copyright Office recorded precisely what it registered and what it did not. The author sought to register a "sculpture" and deposited none; the Office registered a "Drawing/Illustration" and annotated the certificate: "no copyright or registration for any useful article shown in the drawing." ECF No. 16-1. That annotation tracks the statute. A "useful article" is "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information," and the design of such an article is protectable only to the extent of pictorial, graphic, or sculptural features "capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. § 101; *see Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 409 (2017). A lamp is the paradigmatic useful article. *See Mazer v. Stein*, 347 U.S. 201, 214–18 (1954). The FAC accepts the limitation, FAC ¶ 9 (the work is "an original two-dimensional drawing and illustration work"), and the certificate is prima facie evidence of "the facts stated" in it, 17 U.S.C. § 410(c), including the fact that the useful article is not covered.

Section 113(b) confirms the point as a matter of substantive law. Copyright in "a work that portrays a useful article as such" affords no "greater or lesser rights with respect to the making, distribution, or display of the useful article so portrayed than those afforded to such works under the law … in effect on December 31, 1977." 17 U.S.C. § 113(b). Under that law,

copyright in a drawing of a useful article protects the drawing, not the article, and confers no right to prevent others from making the thing depicted. *Baker v. Selden*, 101 U.S. 99, 105 (1879); *Imperial Homes Corp. v. Lamont*, 458 F.2d 895, 898–99 (5th Cir. 1972); *see, e.g.*, *Forest River, Inc. v. Heartland Recreational Vehicles, LLC*, 753 F. Supp. 2d 753, 758–60 (N.D. Ind. 2010) (dismissing claim that manufacturing a travel trailer infringed the copyright in a drawing of its floor plan). The registered drawing portrays a lamp "as such": the certificate says so, and the drawing, a soccer ball mounted on a lamp base, shows it. ECF No. 16-2.

**2. Relabeling the sale of lamps as "reproduction on listing pages" changes nothing.**

The FAC now alleges that Defendant infringed "by reproducing the Copyright-in-Suit on the listing pages of the Infringing Products" and by "displaying copies of the Copyright-in-Suit on its Amazon listing pages." FAC ¶ 64. The FAC identifies no such copy. It attaches no listing page; its citations to "Exhibit B" for Defendant's storefront, FAC ¶¶ 29, 32, lead to the registered drawing, ECF No. 16-2. Its allegation that copies appear on "product pages, seller pages, advertisements, product packaging, and/or the products themselves," FAC ¶ 40; *see id.* ¶¶ 65, 67, is pleaded in the alternative and identifies nothing. Its only exhibit of Defendant's conduct, Exhibit C, consists of photographs of the single product Plaintiff purchased from Defendant: a shipping box, a product box, and a physical lamp, ECF No. 16-3 at 2–4, and its side-by-side comparison sets the registered drawing beside a photograph of that lamp, FAC ¶ 24. Where an exhibit contradicts the pleading's characterization of it, the exhibit controls. *ALA*, 29 F.3d at 859 n.8. A photograph of a lamp is not a copy of a drawing of a lamp. Nor is "displaying copies" on a listing page a "distribut[ion]" of copies, FAC ¶ 64; the distribution right reaches the transfer of copies "to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3). It is a depiction of the useful article, and § 113(b) places the "making,

distribution, or display of the useful article so portrayed" beyond the reach of the copyright in the drawing. The provision Zhu now invokes does not help him: § 113(a) extends the reproduction right to copies "in or on any kind of article," but only "[s]ubject to the provisions of subsections (b) and (c)." 17 U.S.C. § 113(a). The FAC's new vocabulary describes the same conduct the Complaint described, making and selling lamps, and the same conduct that § 113(b) excludes. Count I should be dismissed.

### D. The Drawing Consists of Unprotectable Elements, and the FAC's Own Comparison Shows Similarity Only in Those Elements.

Copyright protects only "original" expression, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991); never "any idea, procedure, process, system, method of operation, concept, principle, or discovery," 17 U.S.C. § 102(b); and not expression that is standard, stock, or dictated by subject matter or function, *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1234–36 (3d Cir. 1986); *Kay Berry*, 421 F.3d at 209. Realistic depictions of objects found in the world receive at most a "thin" copyright. *Feist*, 499 U.S. at 349; *Franklin Mint Corp. v. Nat'l Wildlife Art Exch., Inc.*, 575 F.2d 62, 65 (3d Cir. 1978) (copyright in a rendition "with photograph-like clarity and accuracy" is "weak," because "the expression and the subject matter converge"). Copying is actionable only if the defendant's work is substantially similar to the protectable expression that remains after unprotectable elements are filtered out, and where the works are before the Court that question may be resolved on a motion to dismiss. *Tanksley*, 902 F.3d at 171–75.

The works are before the Court. FAC ¶ 24 & Exs. B, C. The registered drawing depicts a soccer ball, the familiar arrangement of pentagons and hexagons on a sphere, rendered in cross-hatched wireframe and set on a cylindrical base. ECF No. 16-2. The pattern of a soccer ball is a public-domain geometric form that no one may own, *Feist*, 499 U.S. at 348; the wireframe

rendering is the technique by which every "3D illusion" acrylic lamp simulates depth when its engraved lines are lit from below; and the base is the useful article the Office excluded. Once those elements are filtered out, nothing original remains, and the FAC's comparison shows similarity in nothing else: on one side a wireframe soccer ball on a base, on the other a photograph of a flat acrylic panel engraved with a wireframe soccer ball, seated in a base. FAC ¶ 24; ECF No. 16-3.

Zhu's responses do not alter the analysis. He says Defendant's description of the drawing rests on "assertions of counsel," not facts alleged in the FAC. Opp. at 10. But the comparison is one the Court performs by looking at the works, *Tanksley*, 902 F.3d at 171–72, and a soccer ball's geometry is a fact "generally known," Fed. R. Evid. 201(b)(1). Zhu then describes creative choices he says the drawing reflects: "the angle and rotation from which the ball is viewed, which panels are left blank and which are filled, the density and curvature of the grid lines within the filled panels, the treatment of the seams, and the arrangement of the whole." Opp. at 10. None of that appears in the FAC, which alleges only that the work "was independently created by Plaintiff and possesses at least the minimal degree of creativity," FAC ¶ 62, a legal conclusion entitled to no weight, *Iqbal*, 556 U.S. at 678, and a complaint "may not be amended by the briefs in opposition to a motion to dismiss," *Zimmerman*, 836 F.2d at 181. Finally, Zhu faults Defendant for not identifying "a single difference" between the works. Opp. at 11. The FAC's own comparison shows one: the ball is presented from a somewhat different angle, so that the blank pentagon at the center of the registered drawing sits off-center, and at a different angle, on the engraved panel, which places a hatched hexagon at the center instead. FAC ¶ 24; ECF Nos. 16-2, 16-3 at 4. That is a difference in the very respect Zhu calls creative, "the angle and rotation from which the ball is viewed." Opp. at 10. What the two share, blank pentagons and hatched

hexagons arranged as on every soccer ball, is the idea of a soccer ball. The question under *Tanksley* is not whether the works differ but whether their similarities lie in protectable expression, and here they do not.

The FAC also fails to allege actual copying, the first component of the copying element. *Tanksley*, 902 F.3d at 173. Absent direct evidence, copying is shown "through circumstantial evidence of access and similarity." *Id.* The FAC's only allegation of access is that Plaintiff's products "have been" available on Amazon "for years," FAC ¶ 68, without identifying a single listing, product, seller account, or sale, and that is a label, not a fact. *Iqbal*, 556 U.S. at 678. Its alternative assertion that Defendant "could not have replicated the distinctive work without prior access thereto," FAC ¶ 68, fares no better: similarity in features that anyone drawing a soccer ball would produce supports no inference that Defendant copied Zhu's drawing rather than the ball.

**E. Dismissal Should Be With Prejudice.**

Leave to amend may be denied where amendment would be inequitable or futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Zhu has already amended once in direct response to the First Motion and, with the defects identified for him, chose not to attach the first transfer agreement, not to plead any fact supporting his "successor" theory, and not to attach any listing page. The defects addressed in Parts IV.B.1, IV.C, and IV.D are defects of law, not of pleading: no amendment can enlarge the Registration beyond what the Office registered, repeal § 113(b), or make the geometry of a soccer ball original. Those claims should be dismissed with prejudice.

**F. Alternatively, the FAC Should Be Dismissed, or Service Quashed, Under Rule 12(b)(5).**

Defendant has never been served, and Zhu concedes it. Opp. at 12. Plaintiff pleads that

Defendant is a foreign entity, FAC ¶¶ 55, 57, so service must be made under Rule 4(f). Fed. R. Civ. P. 4(f), 4(h)(2). Zhu's answer is that Rule 4(m)'s ninety-day limit does not apply to service abroad. Opp. at 12. That exemption excuses delay; it does not excuse service. Nearly two months after filing, Zhu has not attempted service, Zhang Decl. ¶ 6, has not sought a waiver under Rule 4(d), and has not moved under Rule 4(f)(3). Notice is not service. *Grand Entm't Grp.*, 988 F.2d at 492. Nor has Zhu lacked the information needed to serve: Amazon's public seller profile page for the Seller ID the FAC itself identifies displays Defendant's business name and address, Zhang Decl. ¶¶ 3–5 & Exs. 1–2, and Defendant's legal name and registered address have been of record since September 9, 2026, ECF No. 14-3 ¶ 1. Should the Court not dismiss on the grounds above, the FAC should be dismissed under Rule 12(b)(5) or service quashed and Zhu directed to complete service under Rule 4(f) by a date certain. *See Umbenhauer*, 969 F.2d at 30. In all events, this Motion is timely under Rules 12(a)(1)(A)(i) and 15(a)(3), and it does not waive the defense. Fed. R. Civ. P. 12(g)(1), 12(h)(1). Defendant does not contest personal jurisdiction or venue. *See* Opp. at 13. Its objection is to service of process, a distinct defense that Defendant has raised at every opportunity and that is not waived by litigating the sufficiency of a pleading it has never been served with. Fed. R. Civ. P. 12(b)(5), 12(h)(1).

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss this action because it was commenced in the name of an entity that did not exist and the FAC cannot revive it; in the alternative, dismiss the FAC with prejudice under Rule 12(b)(6); and, in the further alternative, dismiss the FAC or quash service under Rule 12(b)(5).

Dated: October 13, 2026

Respectfully submitted,

*/s/ Jia Song*
Jia Song, Esq. (NY Bar No. 6198246)
(admitted pro hac vice)
Summit Law PLLC
418 Broadway # 8384
Albany, NY 12207
(917) 293-9201
Jia.song@summitlaw.net
*Counsel for Defendant Telkdz*